Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/19/2026 08:20 AM CDT

CHRISTINE K. REILLY, INDIVIDUALLY, AND CHRISTINE K.
REILLY, DERIVATIVELY ON BEHALF OF THE GEORGE J.
KUBAT REVOCABLE TRUST AND THE ESTATE OF
GEORGE J. KUBAT, APPELLANTS, V. PANSING
HOGAN ERNST & BACHMAN LLP AND
THOMAS R. PANSING, APPELLEES.

___ N.W.3d ___

Filed May 19, 2026.    No. A-25-216.

1. **Actions: Parties: Standing: Judgments: Jurisdiction: Appeal and Error.** Whether a party who commences an action has standing and is therefore the real party in interest presents a jurisdictional issue. A jurisdictional issue that does not involve a factual dispute presents a question of law, which the appellate courts independently decide.
2. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.
3. **Negligence.** Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case.
4. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.
5. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
6. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court.

- 286 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

7. ____: ____: ____. Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.

8. **Standing: Parties.** To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.

9. **Decedents' Estates: Actions: Standing.** Under the Nebraska Probate Code, the right and duty to sue and recover assets for an estate reside not in the devisees, but in the estate's appointed personal representative, or, if the personal representative cannot or should not act, the appointed special administrator.

10. **Decedents' Estates.** A person interested in the estate may petition for removal of a personal representative for cause at any time.

11. **Trusts: Actions.** As a general rule, a trust is not a legal personality, and the trustee is the proper person to sue or be sued on behalf of such trust.

12. ____: ____. Similar to a personal representative of an estate, it is the trustee that has the right and duty to prosecute claims for the protection of trust property.

13. ____: ____. Beneficiaries may have standing to bring actions involving a trust or trust properties, although, generally, a trust beneficiary may enforce a cause of action that the trustee has against a third party only if the trustee cannot or will not do so.

14. **Trial: Evidence: Appeal and Error.** One may not, on appeal, assert a different ground for excluding evidence than was urged in the objection made to the trial court.

15. **Attorney and Client.** An attorney-client relationship is created when a person seeks advice or assistance from an attorney, the advice or assistance sought pertains to matters within the attorney's professional competence, and the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.

16. ____. A person's erroneous belief that an attorney-client relationship has been established does not make it so.

17. **Attorney and Client: Parties.** A lawyer owes a duty to his or her client to use reasonable care and skill in the discharge of his or her duties, but ordinarily this duty does not extend to third parties, absent facts establishing a duty to them.

Appeal from the District Court for Douglas County: MOLLY B. KEANE, Judge. Affirmed.

- 287 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

Robert S. Sherrets, Diana J. Vogt, and Guillermo M. Martinez, of Sherrets Bruno & Vogt, L.L.C., for appellants.

Kathryn Van Balen and William Tannehill, of Baylor Evnen Wolfe & Tannehill, L.L.P., for appellees.

Riedmann, Chief Judge, and Bishop and Welch, Judges.

Riedmann, Chief Judge.

## I. INTRODUCTION

An heir and beneficiary of an estate and trust brought suit against an attorney and his law firm asserting professional malpractice related to changes made to her father's estate documents. At issue is whether the heir had standing to bring a derivative suit and whether the attorney and his firm owed her a duty in her individual capacity. The district court for Douglas County granted summary judgment to the attorney and his law firm. We affirm.

## II. BACKGROUND

Christine K. Reilly, individually and derivatively on behalf of the George J. Kubat Revocable Trust (Trust) and the Estate of George J. Kubat (Estate), filed suit against Thomas R. Pansing and his law firm seeking attorney fees and costs associated with two lawsuits that challenged changes made by Pansing to the Trust and will shortly before George J. Kubat's death.

Reilly is one of four children born to George and Judy Kubat. Judy predeceased George, and George began dating Maureen Walsh in about 2009. Walsh was not warmly welcomed by Reilly and her siblings. On May 18, 2009, George created the Trust, drafted by Pansing, with whom he had been friends since the 1970s. George executed a last will and testament on the same day.

In 2011, Pansing prepared an amendment to the Trust, which bequeathed $500,000 to Walsh. At George's request, in 2012, Pansing prepared a premarital agreement that provided Walsh was to receive $5 million in the event she and George

- 288 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

married and George predeceased her. It required that Walsh forgo seeking a spousal election in the event of George's death or a divorce. Walsh refused to sign it, and the parties did not marry at that time.

In 2017, Pansing prepared a restatement of George's Trust, which retained the gift of $500,000 to Walsh, and George signed it. In 2019, Pansing drafted another restatement of George's Trust. In that document, George included a provision leaving Walsh $1 million upon George's death. This was the Trust amendment in existence at the time George's health began to diminish.

On April 2, 2021, George suffered a heart attack and was hospitalized. He was released but readmitted on April 5. He suffered additional heart attacks, and his condition declined. He was placed on life support but remained able to communicate. On April 6, George contacted Pansing and directed him to increase the bequest of property to Walsh to a total of $3 million. Because Pansing was out of the state, Pansing requested someone from his office draft the Trust amendment, and Pansing's legal assistant oversaw its execution in the hospital. Thereafter, Pansing had several phone conversations with George. On April 10, George advised Pansing that he intended to marry Walsh and requested more changes to his estate documents. George instructed Pansing to increase the bequest to Walsh to approximately $6 million, and the two of them discussed the beneficial tax implications of doing so. Thereafter, Pansing directed his office to prepare another Trust amendment that increased the bequest to Walsh to $6 million, and it was executed by George in the hospital on April 12.

On the same day, George executed a last will and testament, prepared by Pansing's firm at George's request, that included a provision stating that George was currently unmarried but was contemplating marriage to Walsh. It further provided that if George was married to Walsh at the time of his death, she was to receive certain real property along with $6 million, reduced by certain assets. It revoked all prior

- 289 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

wills, including one that had been executed in 2009. George and Walsh married that afternoon in the hospital; thereafter, George requested the removal of life support and passed away that evening.

Following George's death, one of George's sons filed an application for appointment of a special administrator, due to a potential will contest. Walsh, as George's spouse, sought formal probate of the April 12, 2021, will. Reilly's siblings filed an objection to probate of the April 12 will, asserting George's lack of testamentary capacity and Walsh's undue influence. The matter was transferred to the district court to address the contested will. Reilly, through her own attorney, filed an objection to the probate of the April 12 will in the district court on the same bases.

Reilly's siblings filed a petition for declaratory judgment regarding the validity of the Trust amendments and of the marriage. They challenged the validity of the April 6 and 12, 2021, Trust amendments on the bases of testamentary capacity and undue influence and sought a declaration that George lacked the capacity to enter into a valid marriage. Although Reilly, through her own attorney, initially filed an answer and cross-claim seeking the same relief, the parties were ultimately realigned to include Reilly as a party plaintiff. Reilly, however, retained her own counsel throughout the proceedings.

A jury trial was held in September 2023. The jury returned a verdict in which it determined George had testamentary capacity to execute all the estate documents and had the capacity to enter into the marriage. It further found that he was not unduly influenced to execute the April 6, 2021, Trust amendment, but that he was unduly influenced by Walsh to execute the April 12 Trust amendment and will. The court entered the verdicts as to the will and accepted the verdicts as to the remaining matters as advisory only. Thereafter, it entered judgment in conformity with all verdicts. Consequently, the Trust amendment of April 12 and the will executed on that same date were invalidated.

- 290 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

During the pendency of the declaratory judgment action, in March 2023, Reilly made demand upon Security National Bank (Security National) as trustee and/or special administrator of the Trust and the Estate to initiate a lawsuit against Pansing and his law firm for attorney malpractice. She asserted that Pansing violated the standard of care by drafting and facilitating the execution of the estate documents, given George's medical condition. The demand letter was sent on behalf of Reilly and requested that Security National seek "to recover the costs incurred from the litigation regarding the death-bed changes to [George's] estate plan." Security National declined on March 31, stating that "our client has determined that it would not be in the best interests of the . . . Trust or the Estate . . . to participate in the action described in the draft Complaint. Accordingly, our client will not join in the proposed lawsuit as you requested in your letter."

Thereafter, Reilly filed this action, individually and derivatively on behalf of the Trust and the Estate, seeking recovery of the costs and attorney fees she expended in the underlying litigation. In discovery, Reilly confirmed that she was seeking recovery of the fees billed by her attorneys. Her siblings confirmed that Reilly was not seeking damages on their behalf.

Pansing and his law firm filed a motion for summary judgment arguing that Reilly had no standing to seek recovery from them, that they owed no duty to her, and that she was not seeking legally recoverable damages. The district court agreed that Reilly had no standing to pursue a derivative action on behalf of the Trust or the Estate because she did not serve in a representative capacity and, even assuming she had standing to individually seek recovery, that the attorneys owed no duty to her. It therefore granted summary judgment in favor of Pansing and the law firm. This appeal followed.

### III. ASSIGNMENTS OF ERROR

Reilly assigns, reordered, that the district court erred in (1) finding that she did not have standing to sue appellees; (2)

- 291 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

finding that she did not have standing to bring claims on behalf of the Trust; (3) receiving exhibit 22 over her objection; (4) finding that appellees did not represent the Kubat family; (5) finding that appellees did not owe her a duty under the factors set forth in *Perez v. Stern*, 279 Neb. 187, 777 N.W.2d 545 (2010); (6) granting appellees' motion for summary judgment; and (7) failing to recognize the appellees had a conflict in purporting to represent only the decedent.

## IV. STANDARD OF REVIEW

[1] Whether a party who commences an action has standing and is therefore the real party in interest presents a jurisdictional issue. A jurisdictional issue that does not involve a factual dispute presents a question of law, which the appellate courts independently decide. *In re Estate of Schurman*, 30 Neb. App. 259, 967 N.W.2d 734 (2021).

[2] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Elbert v. Young*, 312 Neb. 58, 977 N.W.2d 892 (2022).

[3] Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Perez, supra*.

[4] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Czech v. Allen*, 318 Neb. 904, 21 N.W.3d 1 (2025).

[5] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id*.

- 292 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

## V. ANALYSIS

### 1. Standing

#### (a) General Principles

[6-8] Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court. *Kellogg v. Mathiesen*, 320 Neb. 223, 26 N.W.3d 651 (2025). Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf. *Id*. To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy. *Id*.

Reilly filed suit in her individual capacity and derivatively on behalf of the Trust and the Estate. We address Reilly's standing in each of these capacities.

#### (b) Individual Capacity

Reilly participated individually in the underlying action and retained her own counsel. She asserts she incurred legal fees as a result and seeks to recover those fees in the present action. We therefore determine that she had standing to commence this action in her individual capacity.

#### (c) Derivative Action on Behalf of Estate

Reilly argues that the district court erred in finding she lacked standing to bring this action on behalf of the Estate. Although her assigned error does not specifically identify she is contesting standing as it relates to the Estate, the district court assumed Reilly had standing to bring this action individually, and Reilly separately assigns the district court erred in finding she did not have standing to bring this action on behalf of the Trust. Therefore, we read this assigned error to focus on her standing to bring this action on behalf of the Estate.

[9] Under the Nebraska Probate Code, the right and duty to sue and recover assets for an estate reside not in the devisees,

- 293 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

but in the estate's appointed personal representative, or, if the personal representative cannot or should not act, the appointed special administrator. *Kimball v. Rosedale Ranch*, 319 Neb. 650, 24 N.W.3d 841 (2025). To acquire the powers and undertake the duties and liabilities of a personal representative of a decedent, a person must be appointed by order of the court or registrar, qualify, and be issued letters. Neb. Rev. Stat. § 30-2403 (Reissue 2016). No one contends that Reilly was appointed by the court to represent the Estate.

In *Kimball, supra*, the children of a decedent sought to recover assets against a corporation and their stepmother's estate on the theory that certain assets belonged to decedent and would have been distributed to them as devisees if decedent's wife had not improperly acquired them before the decedent died. The Nebraska Supreme Court agreed that under the above principle, the children would lack standing to pursue the action in their individual capacities, stating that "a personal representative or special administrator of [decedent's] estate could seek to recover assets that were wrongfully taken from [decedent], but [his] children, as mere devisees, could not." *Id*. at 657, 24 N.W.3d at 847.

Reilly recognizes that under the Nebraska Probate Code, it is the estate's appointed personal representative that has the right and duty to sue and recover assets for an estate; however, she points out that prior to the adoption of the Uniform Probate Code (UPC), Nebraska courts had permitted an heir to maintain an action to enforce an obligation owed to the estate when the administrator refused to act. She argues that this exception survived the adoption of the UPC. And because the special administrator here refused to advance Reilly's claim, she asserts she had standing to pursue it on behalf of the Estate. She relies upon *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009), to support her position.

In *In re Estate of Hedke*, 278 Neb. at 751, 775 N.W.2d at 32-33, the Supreme Court stated:

- 294 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

We have previously noted that before the Legislature adopted the [UPC], we had permitted an heir to maintain an action to enforce an obligation owed to the estate when the administrator refused to act. [See *Beachy v. Becerra*, 259 Neb. 299, 609 N.W.2d 648 (2000), citing *Prusa v. Everett*, 78 Neb. 250, 113 N.W. 571 (1907).] And we have recognized that there is general authority for this exception. But even if the Nebraska Probate Code permits that exception, an issue we do not decide, here the problem is not a personal representative's refusal or inability to act. Instead, there is no personal representative. The Nebraska Probate Code anticipates this problem by providing for the appointment of a special administrator to administer an estate when a personal representative cannot or should not act. Therefore, there is no need to recognize an exception that permits a devisee to sue on behalf of an estate. We conclude that the appellants did not have standing to recover real property for the estate because of undue influence.

In *In re Estate of Hedke, supra*, the Supreme Court cited *Prusa v. Everett*, 78 Neb. 250, 113 N.W. 571 (1907), as a prior case in which an exception had been found when the personal representative refused to act. The basis for the exception appears to have been the potential delay that would result in removing the personal representative and appointing a new one. In allowing an exception, however, the *Prusa* court observed that the plaintiffs there were all the heirs and beneficiaries under the will and the action was brought by their "guardian." 78 Neb. at 250, 113 N.W. at 571. It noted that there was no danger of a second suit and that the administrator had been made a party defendant to the suit.

Here, Security National was appointed as the special administrator of the Estate when a dispute over the validity of the estate documents became apparent. Reilly made demand upon it, both as special administrator and as trustee, to participate in the current action, which it declined. She then filed suit,

- 295 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

seeking as damages the amount she incurred in attorney fees in the underlying litigation. She was not acting as "guardian" on behalf of all the heirs and beneficiaries, nor did she make Security National a defendant to the action. The safeguards that existed in *Prusa, supra*, do not exist here.

[10] Although there may have been a delay, Reilly could have sought to have Security National removed if she believed its refusal to pursue or join in the lawsuit against Pansing and his law firm constituted a failure to perform its required duties. See Neb. Rev. Stat. §§ 30-2454 and 30-2461 (Reissue 2016). Section 30-2454(a) provides that a person interested in the estate may petition for removal of a personal representative for cause at any time. Section 30-2454(b) provides in pertinent part:

> Cause for removal exists when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking his appointment intentionally misrepresented material facts in the proceedings leading to his appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of his office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

And since the enactment of the UPC, there exists a more expedient method by which Reilly could have pursued this matter. Pursuant to Neb. Rev. Stat. §§ 30-2457 and 30-2460 (Reissue 2016), Reilly could have sought appointment of a special administrator solely for the purpose of initiating and maintaining this action. Section 30-2457(2) allows for appointment of a special administrator

> in a formal proceeding by order of the court on the petition of any interested person and finding, after notice and hearing, that appointment is necessary to preserve the estate or to secure its proper administration including its administration in circumstances where a general personal representative cannot or should not act. If it

- 296 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

appears to the court that an emergency exists, appointment may be ordered without notice.

Although Reilly's excuse for not having pursued one of the two options was an impending statute of limitations against the appellees, she did not request Security National to act until March 29, 2023; George passed away in April 2021, and the will contest became apparent by July 2021. Reilly commenced the present suit while the underlying action was pending, and nothing precluded her from seeking the special administrator's involvement in an attorney malpractice action at an earlier date. And, even if Security National would have refused, as noted above, § 30-2457 provides that if an emergency exists, appointment of a special administrator may be ordered without notice, thereby avoiding the potential delay identified in *Prusa v. Everett*, 78 Neb. 250, 113 N.W. 571 (1907).

As in *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009), we find no reason to broadly determine whether an exception to the general rule vesting authority to sue in the personal representative survived the adoption of the UPC under the facts of this case. As stated above, Reilly had at least two mechanisms by which no exception would have been necessary: removal of Security National as the special administrator or appointment of a special administrator to bring the action on behalf of the Estate. She sought neither.

Reilly sought to pursue this action on behalf of the Estate; and unlike the heirs in *Prusa, supra*, her siblings declined to participate and denied that Reilly was seeking to recover any damages on their behalf. The record reveals Reilly is seeking recovery for only the costs and fees she expended in the underlying action. But an action on behalf of the Estate would seek property belonging to the Estate, the recovery of which would be dispersed according to the Estate documents. Here, Reilly seeks to recoup her attorney fees for her own benefit and not any damages belonging to the Estate.

Under the facts of this case, we determine that Reilly lacked standing to bring this action on behalf of the Estate.

- 297 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

#### (d) Derivatively on Behalf of Trust

Reilly assigns the district court erred in determining she lacked standing to bring this action derivatively on behalf of the Trust. We agree with the district court.

[11,12] As a general rule, a trust is not a legal personality, and the trustee is the proper person to sue or be sued on behalf of such trust. *Back Acres Pure Trust v. Fahnlander*, 233 Neb. 28, 443 N.W.2d 604 (1989). Pursuant to Neb. Rev. Stat. § 30-3874 (Reissue 2016), a trustee shall take reasonable steps to take control of and protect the trust property. Neb. Rev. Stat. § 30-3876 (Reissue 2016) requires a trustee to take reasonable steps to enforce claims of the trust. By the explicit language of the Trust, the trustee has the right and power to sue and defend any claim of the trust or estate. Therefore, similar to a personal representative of an estate, it is the trustee that has the right and duty to prosecute claims for the protection of trust property. See Neb. Rev. Stat. § 30-3881(24) (Cum. Supp. 2024).

[13] There is authority that beneficiaries may have standing to bring actions involving a trust or trust properties, although, generally, a trust beneficiary may enforce a cause of action that the trustee has against a third party only if the trustee cannot or will not do so. 90A C.J.S. *Trusts* § 577 (2020). Pursuant to the Restatement (Third) of Trusts § 107 (2012):

> (2) A beneficiary may maintain a proceeding related to the trust or its property against a third party only if:
>
> (a) the beneficiary is in possession, or entitled to immediate distribution, of the trust property involved; or
>
> (b) the trustee is unable, unavailable, unsuitable, or improperly failing to protect the beneficiary's interest.

The Restatement, *supra*, § 107, comment *c(2)* at 103-04, states:

> It bears repeating that the trustee, and not a beneficiary, is ordinarily the only proper person to bring (and to decide whether to bring) an action on behalf of the trust against a third party. The trustee may well decide, and rightly, not (or not yet) to bring an action. There are

- 298 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

circumstances, however, when it is necessary for a beneficiary to act. If, for example, the beneficiary can show that the trustee is improperly refusing or neglecting to bring an action, or if the trustee is unavailable or unable to act, the protection of the trust estate may depend on the initiative of a beneficiary (including by seeking appointment of a trustee ad litem) . . . .

The Nebraska Supreme Court has recognized that our uniform trust code statutes are derived from the Restatement (Third) of Trusts. See *In re William R. Zutavern Revocable Trust*, 309 Neb. 542, 961 N.W.2d 807 (2021). Other jurisdictions have interpreted § 107 of the Restatement to impose a duty upon the beneficiary to show the trustee's inaction is improper. See, e.g., *Matter of Estate of Calvin*, 963 N.W.2d 319 (S.D. 2021); *Matter of Estate of Mouchague*, 56 Kan. App. 2d 983, 442 P.3d 125 (2019) (stating beneficiaries of trust could maintain proceeding related to trust property if they show trust is improperly failing to protect their interests); *Browning v. Brunt*, 330 Conn. 447, 195 A.3d 1123 (2018) (stating beneficiary must demonstrate trustee is either improperly refusing or improperly neglecting to bring action).

Here, Reilly asserts she made demand upon Security National but it refused. She does not allege, nor did she present any evidence at the summary judgment hearing to prove, that Security National's refusal was improper. To the contrary, the evidence reveals that in refusing to participate in the current action, Security National's counsel advised that "our client has determined that it would not be in the best interests of the . . . Trust or the Estate . . . to participate in the action described in the draft Complaint. Accordingly, our client will not join in the proposed lawsuit as you requested in your letter."

Therefore, even if a derivative action is permissible under the Nebraska Uniform Trust Code, an issue we do not decide, Reilly failed to allege or prove that Security National's refusal was improper; hence, she was not entitled to an exception

- 299 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

to the general rule that actions on behalf of a trust must be brought by the trustee.

We find no error in the district court's determination that Reilly lacked standing to bring a derivative action on behalf of the Trust.

## 2. Alleged Evidentiary Error

Reilly assigns the district court erred in receiving into evidence exhibit 22, the affidavit of Pansing. Reilly objected to numerous paragraphs on the basis of foundation, hearsay, relevance, best evidence, contradiction of prior testimony, and legal conclusions. The district court received the exhibit subject to those objections and stated in its order granting summary judgment that the exhibit was received and that it would give the exhibit the weight it deemed appropriate in considering the motion.

On appeal, Reilly limits her argument to three categories: (1) statements that contradicted prior testimony, (2) topics lacking foundation, and (3) testimony based on hearsay. We address each argument separately.

### (a) Statements Contradicting Prior Testimony

Relying upon the principle from *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981), Reilly argues that Pansing's statements in his affidavit that contradicted his prior testimony were inadmissible. In *Momsen*, the Supreme Court held that where a party without reasonable explanation testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded.

We are unable, however, to apply the *Momsen* principle in the present case, because Reilly fails to identify the specific statements in the affidavit that she claims are contradictory and she fails to provide us with the prior statements with which they allegedly conflicted. Reilly merely states that she

- 300 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

pointed out to the district court "multiple paragraphs," which "either directly contradict his prior testimony or provid[e] an elaborate, detailed recollection of a fact that he previously claimed not to remember." Brief for appellant at 29. Reilly fails to sufficiently argue this assigned error because she does not identify the statements for which she seeks review or the prior testimony that she claims the statements contradict.

Reilly identifies only one specific statement with which she takes issue, that being Pansing's statement that there was no written fee agreement with Reilly or her siblings for legal services provided in 2021. She points out that Pansing "fails to admit that he never had a signed fee agreement with [George] or his children for any of the work he admittedly provided." *Id.* at 29. She provides no citation to the record to substantiate this. Moreover, even if the latter statement were accurate, that does not *contradict* the statement that no such written fee agreement was provided in 2021; rather, it simply identifies an omission within Pansing's affidavit.

This assignment of error fails.

### (b) Topics Lacking Foundation

Reilly argues that many of the paragraphs contained expert testimony aside from opinions on the standard of care for estate planning attorneys. She argues "without presenting any additional qualifications, [Pansing] was allowed to testify as an expert on tax law . . . , duties of [an] attorney in fact for health care . . . , standard of care for a legal assistant[,] and even George's thoughts and wishes." *Id.* at 29. We read this as a challenge under Neb. Rev. Stat. § 27-702 (Reissue 2016) that Pansing's affidavit failed to set forth the knowledge, skill, experience, training, or education upon which he could base his opinions.

Pansing's affidavit states that he has practiced law over 50 years with his "practice focused upon tax and estate planning." His opinions were based upon his "training, education, and experience, including [his] over fifty (50) years' experience

- 301 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

working as an attorney in a law firm and [his] decades of experience filling multiple roles in a law firm (associate, partner, and now, of counsel)." The affidavit further outlines his work with legal assistants, including directing, training, and supervising them. Likewise, Pansing detailed his experience with health care powers of attorney.

Given Pansing's extensive experience in tax and estate planning, and his training, education, and experience involving legal assistants and health care powers of attorney, the affidavit contained adequate foundation for the opinions expressed therein. Regarding "George's thoughts and wishes" to which Reilly objected, she does not identify which portion of the affidavit contains the offending statements. See brief for appellant at 29. However, the affidavit makes clear that Pansing and George had a 50-plus year friendship during which many conversations were had regarding George's estate, his relationship with Walsh, and his ultimate wishes. This assigned error fails.

### (c) Testimony Based on Hearsay and Intended to Mislead

[14] Reilly's final argument related to Pansing's affidavit is framed in terms of hearsay and a violation of Neb. Reb. Stat. § 27-403 (Reissue 2016). However, she does not identify specific statements constituting hearsay, and, in fact, she does not use the term except in the heading for that section. Rather, she argues that the affidavit, as a whole, created an inaccurate picture of the situation that existed at the time. None of the objections she made at the hearing, however, encompassed this argument, and although she cites § 27-403 on appeal, it was not a basis for her objection at trial. One may not, on appeal, assert a different ground for excluding evidence than was urged in the objection made to the trial court. *Ford v. Estate of Clinton*, 265 Neb. 285, 656 N.W.2d 606 (2003). We therefore decline to address this argument.

- 302 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

We find no error in the district court's decision to receive Pansing's affidavit over Reilly's objections.

### 3. Pansing's Representation of Only George

Reilly assigns that the district court erred in finding that Pansing and his law firm did not represent the Kubat family. Reilly asserts that because Pansing and his law firm provided multiple legal services to various family members and "the family company" in the past, an attorney-client relationship existed between the attorneys and the Kubat family members, and Pansing failed to advise Reilly of this conflict. See brief for appellant at 27.

[15] An attorney-client relationship is created when a person seeks advice or assistance from an attorney, the advice or assistance sought pertains to matters within the attorney's professional competence, and the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997), *overruled on other grounds, Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017). In appropriate cases, the last element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it. See *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991).

Here, because we have determined that Reilly does not have standing to bring a derivative suit on behalf of the Estate or the Trust, we focus on whether the evidence presents a material issue of fact as to whether an attorney-client relationship existed between Reilly, individually, and the attorneys. According to Reilly, Pansing and his firm prepared estate planning documents for her in approximately 1998 with revisions in approximately 2005. Following that, she had contact with the law firm for services it rendered for the family corporation. Neither of these encounters would create

- 303 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

an attorney-client relationship between Pansing and Reilly as it relates to George's estate planning.

Reilly also relies upon meetings she attended with her siblings, George, and Pansing in which George's estate plans were shared. She described these as meetings in which Pansing "would give a presentation to discuss George's estate plan." But these merely reflect George's desire to advise the children of his estate plans by including them in meetings with Pansing in which they were informed of his plans. Reilly's brother explained "they would involve us at times in meetings about what the plans were on the stocks for the company and his estate, so, you know — but yes, I mean, I already answered your question where George was the client." Even Reilly admitted that as to George's estate plan she "had input but not final decision."

[16] Even if Reilly believed her inclusion in these informational meetings created an attorney-client relationship with Pansing, a person's erroneous belief that an attorney-client relationship has been established does not make it so. See *Swanson v. Ptak*, 268 Neb. 265, 269, 682 N.W.2d 225, 230 (2004) (rejecting existence of attorney-client relationship based on how party "'felt'"). In *Swanson*, an attorney performed services for both a husband and a wife. The husband predeceased his wife, and the attorney served as personal representative of the wife's estate after she died. He met with various family members of both and explained that the estate would pass to the wife's heirs unless there was an agreement to share with the husband's heirs. The personal representative sent several letters diagraming what a division of the estate would entail if the wife's heirs agreed to a division. Based upon this, an heir of the husband requested, and received, a partial distribution from the estate. Thereafter, the personal representative was advised that the wife's heirs would not agree to a division, and he requested a return of the disbursed money.

The husband's heir filed a malpractice action against the personal representative, arguing that he was acting as her attorney

- 304 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

in the negotiation of the estate distribution. The Supreme Court recognized that the heir's belief that an attorney-client relationship existed was sincere but held as a matter of law that there was no implied relationship. Consequently, it granted summary judgment to the attorney.

We reach the same result here. Any personal attorney-client relationship Reilly had with Pansing and his firm was limited to her own estate planning. And while Reilly may have been the contact person for legal services provided to the family corporation, that did not create an attorney-client relationship between her and the attorneys as it related to George's estate plan. Reilly's siblings all recognized that as it related to George's estate plan, the attorney-client relationship existed between George and Pansing.

Reilly presents one other argument upon which she relies to establish an attorney-client relationship with Pansing, although it is contained within another section of her brief. Reilly claims that Pansing's actions created an attorney-client relationship because he divulged George's requested changes to her and her siblings, and if she was not Pansing's client, this would be an ethical violation. However, one or more of George's children were present during most of the phone conversations between George and Pansing in which the changes were discussed, and, according to the children, Walsh was almost always in the room. Therefore, there was no privilege regarding these conversations. See *Dunmire v. Cool*, 195 Neb. 247, 237 N.W.2d 636 (1976) (conversations with attorney in presence of others do not constitute privileged communication). Discussion of the Trust amendments between George and Pansing in the presence of others did not create an inference of an attorney-client relationship with Reilly, nor does it present a genuine issue of material fact regarding the existence of such a relationship.

Having found no attorney-client relationship between Reilly and Pansing, we turn to the question of whether Pansing nonetheless owed Reilly a duty of care.

- 305 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

### 4. No Duty to Reilly

Reilly assigns the district court erred in failing to find a duty owed to her under *Perez v. Stern*, 279 Neb. 187, 777 N.W.2d 545 (2010). We disagree and find *Perez* distinguishable from the facts of this case.

[17] In *Perez*, the Supreme Court recognized a duty owed by an attorney to nonclient minor children for whose benefit a wrongful death action was to be commenced. In doing so, it observed that in Nebraska, a lawyer owes a duty to his or her client to use reasonable care and skill in the discharge of his or her duties, but ordinarily this duty does not extend to third parties, absent facts establishing a duty to them. Despite there being no attorney-client relationship between the attorney and the children, the court noted that it had never said that privity was an absolute requirement of a legal malpractice claim; rather, that was the general rule absent facts establishing a duty to them.

The *Perez* court identified six factors to be balanced in determining whether an attorney owes a duty to a nonclient. They include

> (1) the extent to which the transaction was intended to affect the third party, (2) the foreseeability of harm, (3) the degree of certainty that the third party suffered injury, (4) the closeness of the connection between the attorney's conduct and the injury suffered, (5) the policy of preventing future harm, and (6) whether recognition of liability under the circumstances would impose an undue burden on the profession.

*Id.* at 192-93, 777 N.W.2d at 550-51. It emphasized the starting point for analyzing an attorney's duty to a third party is determining whether the third party was a direct and intended beneficiary of the attorney's services.

The *Perez* court held that the above factors supported important specific limitations on liability in attorney malpractice cases, including that (1) the attorney's agreement with the client determines the scope of the attorney's duty to a third-party

- 306 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

beneficiary; (2) a person adverse to the attorney's client cannot be a beneficiary of the attorney's retention; (3) foreseeability that the attorney's representation could injure or benefit an identified person will not, without more, create a duty to the third person; and (4) a duty to a third party will not be imposed if that duty would potentially conflict with the duty the attorney owes his or her client.

Because the attorney in the *Perez* case was retained to commence a wrongful death action arising out of the death of the children's father, the court concluded that none of the limitations identified above raised concern. The wrongful death action was intended to directly benefit the decedent's next of kin, the children. Because it was clear that the children were direct and intended beneficiaries of the transaction and there could be no other purpose to the attorney's representation under the Nebraska wrongful death statute, the court concluded the attorney owed a duty to the children.

Applying the above factors and limitations set forth above, the same cannot be said as it relates to Pansing's representation of George. One need only look to the conflict that would arise if Pansing simultaneously owed a duty to George and Reilly. There is no genuine issue of disputed fact that Pansing carried out George's wishes and that Reilly disagreed with them. And the undisputed evidence is that George intended the requested changes to his estate planning documents to reduce tax liability, which would have been accomplished by those changes. Furthermore, if a duty was extended to Reilly as a beneficiary, so too would a duty extend to each of the beneficiaries, including Walsh. See *Perez v. Stern*, 279 Neb. 187, 777 N.W.2d 545 (2010) (recognizing that imputing duty to third party could have created conflicting loyalties to adverse or different parties in prior cases where court refused to impose duty to nonclient).

As a general rule, the duty to exercise reasonable care and skill which a lawyer owes his client ordinarily does not extend to third parties in an estate planning context. See,

- 307 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

e.g., *Swanson v. Ptak*, 268 Neb. 265, 682 N.W.2d 225 (2004); *Lilyhorn v. Dier*, 214 Neb. 728, 335 N.W.2d 554 (1983); *St. Mary's Church v. Tomek*, 212 Neb. 728, 325 N.W.2d 164 (1982). Whether a duty exists in a given case is fact specific. Under the facts of this case, we agree that Pansing owed no duty to Reilly.

Reilly also assigns that the district court erred in failing to find that Pansing had a conflict in representing only George. Based on our discussion above identifying the conflict that would exist if Pansing owed a duty to Reilly, we need not further discuss this assigned error.

## 5. Granting of Summary Judgment

Reilly assigns the district court erred in granting summary judgment because there were genuine issues of material fact. She identifies these disputed facts as (1) the existence of an attorney-client relationship between Reilly and Pansing, and (2) George's physical and mental capacity to give detailed tax analysis to the amendments made. However, she argues only the first category.

Reilly states that she "presented ample evidence of a conflict on the genuine issue of material fact regarding her understanding of the existence of an attorney-client relationship during relevant time periods." Brief for appellant at 11. However, we considered and rejected Reilly's argument that an attorney-client relationship existed between her and Pansing. She asserts that one area of conversation between Pansing and her or her siblings created a genuine issue of material fact regarding an attorney-client relationship. She argues that Pansing advised "them" they "'had a good case for undue influence.'" *Id*. However, the record reveals that if such statement was made, it was made to Reilly's brother and not to Reilly. Therefore, this "advice" that Reilly asserts created a genuine issue of material fact regarding representation does not run to her. And her brother to whom this statement was allegedly made testified that he knew that when Pansing

- 308 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
REILLY v. PANSING HOGAN ERNST & BACHMAN
Cite as 34 Neb. App. 285

was making changes to the Estate documents in April 2021, the attorney-client relationship existed as between George and Pansing, and not with him.

We reject Reilly's argument that a genuine issue of material fact existed that would preclude summary judgment in favor of Pansing and his law firm.

## VI. CONCLUSION

We find no error in the district court's grant of summary judgment in favor of Pansing and his law firm. We therefore affirm the district court's order.

Affirmed.